## FELKER v. GULF COAST ORCHARDS CO.

### No. 9531.

Court of Civil Appeals of Texas. San Antonio.

March 13, 1935.

Rehearing Denied April 10, 1935.

Brown & Bader and J. R. Norvell, all of Edinburg, for appellant.

Griffin & Kimbrough, of McAllen, for appellee.

MURRAY, Justice.

This is a suit by appellant, J. Trout Felker, against appellee, Gulf Coast Orchards Company, a corporation, seeking to recover certain sums of money alleged to be due appellant by appellee for services rendered and work done under a contract entered into between these parties, wherein appellant agreed to care for the orchards belonging to appellee. The contract was for an indefinite period of time and could be terminated by either party at any time, the only real controversy being as to the date the contract was in fact terminated. Appellee's contention is that the contract was terminated on November 15, 1931, while appellant contends that it was terminated, in a conversation which he had with D. E. Kirgan, president of appellee corporation, on February 23, 1932, in which they mutually agreed that the contract should be terminated as of February 15, 1932.

Appellant's petition was in two counts. The first count attempts to allege a cause of

action on a stated account. The trial court sustained demurrers to this count, and we think properly so, as the allegations were not sufficient to state a cause of action upon a stated account. A stated account is more than a statement rendered by one person to another; it must be in the nature of an agreed account.

▮▮ Appellee, in addition to answering to appellant's petition, filed a cross-action alleging that on November 19, 1932, appellant shot and wounded B. S. (Scott) Graham; that he was an officer, employee, servant, and agent of appellee; and that appellee was damaged by the loss of the services of said Graham. Appellant excepted to this cross-action, but the trial court refused to strike it out. Appellee concedes that appellant's cause of action is based upon a contract, while its cross-action is founded on tort, and that ordinarily such a cross-action cannot be pleaded against a liquidated demand. Appellee, however, contends that its cross-action is authorized by the provisions of article 2017, R. S. 1925, which are as follows: "Art. 2017. *Set-off.*— If the plaintiff's cause of action be a claim for unliquidated or uncertain damages, founded on a tort or breach of covenant, the defendant shall not be permitted to set off any debt due him by the plaintiff. If the suit be founded on a certain demand, the defendant shall not be permitted to set off unliquidated or uncertain damages founded on a tort or breach of covenant on the part of the plaintiff. However, the defendant may plead in set off any counter claim founded on a cause of action arising out of or incident to, or connected with, the plaintiff's cause of action."

Appellee's specific contention is that its cross-action arose out of, was incident to, or connected with, appellant's cause of action, in that appellant was trying to collect what he contended was due him under the contract sued on at the time he shot Graham. We overrule this contention and conclude that the trial court erred in not sustaining the demurrers to the cross-action. The shooting occurred more than nine months after the contract had terminated according to the position taken either by appellee or appellant. It was too remotely connected with the contract to be a proper ground for setting up a cross-action. Appellee offered no evidence on the trial in support of his cross-action, but the reading thereof to the jury was prejudicial to the rights of appellant. The allegations of the cross-action were of such a nature as to arouse passion and prejudice in the minds of the jury against appellant.

▮ Appellant next complains of the action of the trial court in striking out certain portions of the evidence given by the witness Houston Allen. This witness had testified, in substance, that D. E. Kirgan came to him and told him that he (Kirgan) wanted the spring clean-up started, the tractors started, and the banks removed from the trees; and that he wanted to know if the witness could assemble the crew and get the spring clean-up started; and that there had to be a change in the working program of the coming year. Kirgan asked the witness not to go to Mr. Felker with this; stating in this connection that Mr. Felker's health wasn't at its best at that time, and that he would talk to Mr. Felker about the change in the contract at a later date, but, at the same time, for the witness to start the work and keep an itemized account of same.

Counsel for appellee moved to strike out this testimony, upon the grounds that it was wholly irrelevant, immaterial, and incompetent and did not bear on any question in this lawsuit.

After some discussion and argument on the part of counsel for both sides, the trial judge asked the witness the following questions, which were answered by the witness as indicated:

"The Court: Q. In this conversation you say you and Mr. Kirgan had, did you and Mr. Kirgan have any conversation with reference to the termination of Mr. Felker's contract at that time?

"The Witness: A. Not directly, I don't think so.

"The Court: Q. What do you mean directly?

"The Witness: A. Well, no more than what I just testified, that he told me that he would discuss it with Mr. Felker.

"The Court: Q. About this spring clean-up?

"The Witness: A. No, the change in the work for the coming year, not the spring clean-up.

"The Court: Q. He didn't want you to discuss it with Mr. Felker, because of his health?

"The Witness: A. That is the way I got it. Yes, sir."

The court then granted appellee's motion to strike and gave the jury the following instruction: "Gentlemen of the jury, you will disregard the statements of the witness which have been testified to, relative to Mr. Kir-

gan's saying he would see Mr. Felker about a change in the work, on account of Mr. Felker being sick."

The evidence was improperly stricken and taken from the consideration of the jury. When we consider that the all-important question in the case is, when was Felker's contract terminated? the importance of this testimony clearly appears. It was not for the court to decide what Kirgan intended by these alleged remarks. What was intended by this testimony and the weight to be given to it were matters for the jury, and the jury alone, to decide. The exclusion of this testimony from the jury was reversible error.

Furthermore, the cross-examination of the witness by the court in the presence of the jury amounted to a comment upon the weight of the testimony. If a court feels that it is necessary for the court to cross-examine a witness to enable him to pass upon the admissibility of evidence given by the witness, the safest plan is to first have the jury retire before conducting such examination.

There are a great number of assignments of error, some seventy-seven in all; but, as they relate to matters which will probably not occur upon another trial, we will refrain from discussing them.

For the error pointed out, the judgment will be reversed and the cause remanded for a new trial.